UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MATTHEW ORAL LISH,

                   Plaintiff,

    v.

NANCY BERRYHILL, Acting Commissioner
of Social Security,

                 Defendant.

Case No. 2:17-cv-00743-JCC-TLF

REPORT AND
RECOMMENDATION

Noted for <u>February 16, 2018</u>

Matthew Oral Lish has brought this matter for judicial review of defendant's denial of his applications for disability insurance and supplemental security income (SSI) benefits. This matter has been referred to the undersigned Magistrate Judge. *Mathews, Sec'y of H.E.W. v. Weber*, 423 U.S. 261 (1976); 28 U.S.C. § 636(b)(1)(B); Local Rule MJR 4(a)(4). For the reasons set forth below, the undersigned recommends that the Court reverse defendant's decision to deny benefits and remand this matter for further administrative proceedings.

## I.  <u>BACKGROUND</u>

Mr. Lish filed applications for a period of disability and disability insurance benefits and for SSI, both on December 6, 2013. Dkt. 9, Administrative Record (AR) 16. He alleged in his applications that he became disabled beginning October 3, 2010.[1] *Id.* His application was denied

---

[1] Social security disability insurance (SSDI) benefits are based on earnings, and the benefits are limited to the period of insurance. 42 U.S.C. §§ 401(b), 423(c)(1), (d)(1)(A). The legal criteria for deciding whether a disability exists is the same under both SSDI and Supplemental Security Income (SSI). *Diedrich v. Berryhill*, 874 F.3d 634, 637 (9th Cir. 2017).

REPORT AND RECOMMENDATION - 1

on initial administrative review and on reconsideration. *Id.* A hearing was held before an administrative law judge (ALJ) on September 11, 2015. AR 69-103. Mr. Lish and a vocational expert appeared and testified. At the hearing, Mr. Lish amended the alleged onset date to April 27, 2011. AR 40.

The ALJ found that Mr. Lish could perform jobs that exist in significant numbers in the national economy, and therefore that he was not disabled. AR 16-32 (ALJ decision dated February 3, 2016). The Appeals Council denied Mr. Lish's request for review on March 7, 2017, making the ALJ's decision the final decision of the Commissioner. AR 1. Mr. Lish appealed that decision in a complaint filed with this Court on May 17, 2017. Dkt. 3; 20 C.F.R. §§ 404.981, 416.1481.

The ALJ determined that Mr. Lish suffered from the following severe impairments: "Schizoaffective disorder, panic disorder with agoraphobia, myofascial pain syndrome, fibromyalgia, obstructive sleep apnea, and right carpal tunnel syndrome." AR 19. The ALJ reviewed the medical evidence and decided that Mr. Lish was not disabled, because even with the severe impairments he could still perform certain types of "light work." AR 19, 22-30.

The parties disagree regarding whether the ALJ erred in considering opinions from four medical professionals. The parties also disagree about whether the ALJ erred in discounting Mr. Lish's testimony regarding severity of symptoms and in assessing Mr. Lish's residual functional capacity (RFC). And the parties disagree about whether the ALJ's consideration of the medical evidence and Mr. Lish's testimony affected the ALJ's step five finding that Mr. Lish can perform jobs existing in significant numbers in the national economy.

Mr. Lish seeks reversal of the ALJ's decision and remand for further administrative proceedings, arguing that the ALJ misapplied the law and lacked substantial evidence for his

REPORT AND RECOMMENDATION - 2

decision.

For the reasons set forth below, the undersigned concludes that the ALJ did not properly apply the law at step five of the disability analysis and substantial evidence does not support his rejection of the medical opinion evidence and of Mr. Lish's testimony. The undersigned recommends that the ALJ's decision to deny benefits should be reversed, and the Court should remand for further proceedings.

## II.  STANDARD OF REVIEW AND SCOPE OF REVIEW

The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If the ALJ finds the claimant disabled or not disabled at any particular step, the ALJ makes the disability determination at that step and the sequential evaluation process ends. *See id*.

The five steps are a set of criteria by which the ALJ considers: (1) Does the claimant presently work in substantial gainful activity? (2) Is the claimant's impairment (or combination of impairments) severe? (3) Does the claimant's impairment (or combination) equal or meet an impairment that is listed in the regulations? (4) Does the claimant have RFC, and if so, does this RFC show that the complainant would be able to perform relevant work that he or she has done in the past? And (5) if the claimant cannot perform previous work, are there significant numbers of jobs that exist in the national economy that the complainant nevertheless would be able to perform in the future? *Keyser v. Comm'r of Soc. Sec. Admin.,* 648 F.3d 721, 724-25 (9th Cir. 2011).

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error; or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might

1   accept as adequate to support a conclusion.'" *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir.

2   2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir.

3   1988)). This requires "'more than a mere scintilla,'" though "'less than a preponderance'" of the

4   evidence. *Id.* (quoting *Desrosiers*, 846 F.2d at 576). If more than one rational interpretation can

5   be drawn from the evidence, then the Court must uphold the ALJ's interpretation. *Orn v. Astrue,*

6   495 F.3d 625, 630 (9th Cir. 2007). The Court may not affirm by locating a quantum of

7   supporting evidence and ignoring the non-supporting evidence. *Id*.

8

9       The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759

10  F.3d 995, 1009 (9th Cir. 2014). The Court is required to weigh both the evidence that supports,

11  and evidence that does not support, the ALJ's conclusion. *Id.* The Court may not affirm the

12  decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Only the reasons identified

13  by the ALJ are considered in the scope of the Court's review. *Id*.

14

15              III.   <u>THE ALJ'S CONSIDERATION OF THE MEDICAL EVIDENCE</u>

16      Mr. Lish alleges that the ALJ erred by rejecting the opinions of four medical sources: Dr.

17  Widlan (examining psychiatrist), Dr. Mitchell (examining clinical psychologist), Dr. Cantrell

18  (examining psychiatrist), and Dr. Adam (treating physician). Dkt. 11 at 4. The Social Security

19  Administration argues that the ALJ had substantial evidence to support the decision that Mr. Lish

20  was not disabled, and provided clear and convincing reasons (where the opinions are not

21  contradicted), and specific legitimate reasons (where the opinions are contradicted), for rejecting

22  opinions of these four medical professionals. In addition, the defendant asserts that the ALJ

23  properly relied instead on the opinions of Dr. Gary Gaffield, Thomas Clifford, Ph.D., and Dan

24  Donahue, Ph.D. Dkt. 12 at 8-15. The defendant also argues that error, if any, was harmless

25

26

REPORT AND RECOMMENDATION - 4

because the ALJ had other valid reasons and evidence that provided substantial evidence to support the ALJ's decision. Dkt. 12 at 15.

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where the evidence is inconclusive, "'questions of credibility and resolution of conflicts are functions solely of the [ALJ]'" and this Court will uphold those conclusions. *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)). As part of this discretion, the ALJ determines whether inconsistencies in the evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant" in deciding how to weigh medical opinions. *Id.* at 603.

The ALJ must support his or her findings with "specific, cogent reasons." *Reddick*, 157 F.3d at 725. To do so, the ALJ sets out "a detailed and thorough summary of the facts and conflicting clinical evidence," interprets that evidence, and makes findings. *Id.* The ALJ does not need to discuss all the evidence the parties present but must explain the rejection of "significant probative evidence." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted). The ALJ may draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. And the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

To reject the uncontradicted opinion of either a treating or examining physician, an ALJ must provide clear and convincing reasons. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). When other evidence contradicts the treating or examining physician's opinion, the ALJ must still provide "specific and legitimate reasons" to reject that opinion. *Id.* "'The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical

REPORT AND RECOMMENDATION - 5

1    evidence, stating his interpretation thereof, and making findings.'" *Id.* (quoting *Magallanes*, 881

2    F.2d at 751). In either case, the ALJ's reasons must be supported by substantial evidence in the

3    record. *Lester v. Chater,* 81 F.3d 821, 830-31 (9th Cir. 1995).

4        Finally, a non-examining physician's opinion may constitute substantial evidence for an

5    ALJ's findings if that opinion "is consistent with other independent evidence in the record."

6    *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). The opinion of a non-examining

7    physician does not, standing alone, constitute substantial evidence concerning the rejection of the

8    opinion of either an examining physician or a treating physician. *Lester*, 81 F.3d at 831.

9

10       In this case, the ALJ reviewed the medical evidence to arrive at Mr. Lish's RFC. The

11   Commissioner uses a claimant's RFC assessment at steps four and five to determine whether he

12   or she can perform his or her past relevant work and whether he or she can do other work. SSR

13   96-8p, 1996 WL 374184 *2. The RFC is what the claimant "can still do despite his or her

14   limitations." Id.

15       The ALJ based his assessment of Mr. Lish's RFC on an examination of the medical

16   evidence, and in part on his rejection of the opinions of David Widlan, Ph.D., Melanie Mitchell,

17   Psy.D., and Rowin Cantrell, M.D., that Mr. Lish's mental health conditions would significantly

18   limit his ability to perform functions necessary to hold a job, and on his rejection of the opinion

19   of Margaret Adam, M.D., that Mr. Lish's physical conditions would also limit him. AR 26-28,

20   30.

21       The ALJ found that Mr. Lish had the RFC:

22

23

24       **to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)
         except that the claimant can frequently stoop, kneel, crouch, crawl, and
25       climb ramps and stairs. The claimant should avoid climbing ladders, ropes,
         and scaffolds and is limited to frequent handling and fingering. The claimant
26       is able to adapt to a predictable work routine with no more than occasional
         changes in terms of assigned work tasks and the procedures for**

REPORT AND RECOMMENDATION - 6

**accomplishing those tasks. The claimant is limited to occasional and superficial public interaction. The claimant is able to interact with co-workers on a casual and superficial basis but would not do well as a member of a highly interactive or interdependent work group.**

AR 22 (emphasis in original).

The vocational expert testified that a person with Mr. Lish's RFC could work as a marking clerk, a routing clerk, or mailroom clerk. AR 101. The ALJ accordingly found Mr. Lish not disabled at step five. AR 31-32.

A.  Dr. Widlan

1.    Dr. Widlan's Examining Opinion

Dr. Widlan examined Mr. Lish in March 2014. AR 517. He based his opinion on a clinical interview that included a mental status examination (MSE), as well as records from Sound Mental Health dated February 2013 to January 2014 and one record from Neighborcare Health, dated December 2013. *Id.* He reviewed Mr. Lish's reported history of his conditions: in particular, that Mr. Lish has experienced auditory hallucinations since he was 20 years old and hears voices telling him to hurt himself and others, though he can distinguish reality from hallucinations. *Id.* Mr. Lish also described symptoms of depression, general dysphoria, anhedonia, anxiety, and panic attacks. *Id.*

Dr. Widlan's examination found Mr. Lish's grooming to be "marginal;" that Mr. Lish showed anxiety and no signs of malingering; that he described his mood as depressed and his affect was correspondingly flat; that he experienced auditory hallucinations; that he reported impaired activities of daily living and social functioning; and that he had some difficulty concentrating. AR 519-20. Dr. Widlan made unremarkable observations in other areas, including memory, insight, and abstraction. *Id.* Dr. Widlan listed diagnoses of schizoaffective disorder and

REPORT AND RECOMMENDATION - 7

panic disorder without agoraphobia, along with methamphetamine abuse in long-term sustained remission. AR 521. He scored Mr. Lish at 42 on the global assessment of functioning (GAF), indicating "'[s]erious symptoms . . . [or] serious impairment in social, occupational, or school functioning,' such as an inability to keep a job." *Id.*; *Pisciotta v. Astrue*, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007) (quoting Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) ("DSM-IV-TR") at 34).

Dr. Widlan opined that Mr. Lish's "prognosis is likely poor given the consistency and intensity of the auditory hallucinations" and that Mr. Lish would need regular counseling in basic coping skills. AR 521. He found that the MSE showed "adequate concentration with some deficits in memory and social reasoning;" that Mr. Lish was cognitively capable of receiving instructions; and that Mr. Lish experienced paranoia but could distinguish reality from hallucinations. Dr. Widlan opined that Mr. Lish "has significant adaptive deficits" and "would clearly struggle with attendance as well as persistence," and that Mr. Lish "would become easily overwhelmed by social stressors in an employment setting." *Id.*

2.    The ALJ's Analysis of Dr. Widlan's Opinion

The ALJ gave "some weight" to Dr. Widlan's opinions about Mr. Lish's concentration and ability to accept instruction from a supervisor. AR 27. But he gave "little weight" to the rest of Dr. Widlan's opinion, including the GAF score, explaining "that the limitations he proposed have no clear correlation to objective medical evidence." *Id.* The ALJ cited Mr. Lish's performance on the MSE: that he "showed no tangential or circumstantial comments" and performed adequately on cognitive tests. *Id.* The ALJ further found that Dr. Widlan's opinion was inconsistent with Mr. Lish's "capacity to perform functions related to activities that interest him, as reflected in treatment records." *Id.*

REPORT AND RECOMMENDATION - 8

3. <u>The ALJ Erred in Rejecting Dr. Widlan's Opinion.</u>

The Court should hold that the ALJ erred by failing to provide specific and legitimate reasons for rejecting Dr. Widlan's opinions.

First, the ALJ applied an incorrect standard in demanding that Dr. Widlan's opinions have a "clear correlation to objective medical evidence." AR 27. "'[T]he relative imprecision of the psychiatric methodology'" is an inadequate reason to reject a psychiatric opinion. *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (quoting *Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989)). "Psychiatric evaluations may appear subjective, especially compared to evaluation in other medical fields. Diagnoses will always depend in part on the patient's self-report, as well as on the clinician's observations of the patient. But such is the nature of psychiatry." *Id.*

Here, the ALJ rejected Dr. Widlan's opinion that Mr. Lish "has significant adaptive deficits," would "struggle with attendance as well as persistence," and "would become easily overwhelmed by social stressors in an employment setting." AR 521. But the record does not support the ALJ's finding that the MSE results are inconsistent with the rejected portions of Dr. Widlan's opinions.

The MSE testing showed an ability to identify specific time periods of life events, remember three objects out of three after a five-minute lapse, and repeat digits within normal limits. AR 519. Dr. Widlan observed that Mr. Lish "was generally able to complete MSE tasks" and that the test showed "adequate concentration with some deficits in memory and social reasoning." AR 521.

Based on Dr. Widlan's  observations about the MSE testing, the Court may reasonably infer that Dr. Widlan's opinions that Mr. Lish would struggle with adaptation, attendance,

REPORT AND RECOMMENDATION - 9

persistence, and social stressors relied not on Mr. Lish's performance on the MSE but instead *on his schizoaffective disorder*—manifesting in auditory hallucinations—*and his panic attacks*. Therefore, substantial evidence does not support the ALJ's finding of inconsistency between the MSE results and Dr. Widlan's opinions regarding struggle with adaptation, attendance, persistence, and social stressors.

Rather than giving specific and legitimate reasons to reject Dr. Widlan's examining opinion, the ALJ reassessed the same data upon which Dr. Widlan based his medical opinion. The ALJ reached a different conclusion of his own, rejected Dr. Widlan's opinion, and in doing so, the ALJ essentially attempted to give his own medical opinion. An ALJ "must be careful not to succumb to the temptation to play doctor" in this way. *See Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990). The ALJ's first reason to reject Dr. Widlan's opinion was therefore erroneous.

The ALJ's second reason—that Dr. Widlan's opinion was inconsistent with Mr. Lish's activities "as reflected in treatment records"—is too vague and conclusory to satisfy the requirement that the ALJ give a "detailed and thorough summary of the facts and conflicting clinical evidence." AR 27; *Reddick*, 157 F.3d at 725. It is also unsupported by the record: as discussed below, the ALJ erroneously determined that Mr. Lish's activities were inconsistent with the limitations that he testified to and the medical experts, including Dr. Widlan, opined on.

B.  Dr. Mitchell

1.    Dr. Mitchell's Examining Opinion

Dr. Mitchell examined Mr. Lish in January 2014. AR 500. Like Dr. Widlan, she based her evaluation of Mr. Lish's mental health conditions on a clinical interview and a mental status exam, though she reviewed only one medical record, a 2011 psychological evaluation. *Id.*

REPORT AND RECOMMENDATION - 10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

In the MSE, Dr. Mitchell found that Mr. Lish showed limited eye contact, inappropriate facial expressions, a sullen and flat affect, and no evidence of feigning behaviors. AR 503. She also found that Mr. Lish showed suicidal ideation, auditory delusions, limited recent memory, limited concentration, and limited insight. AR 503-04. Dr. Mitchell also administered a Personality Assessment Inventory. Interpreting the results, she found some indications of "mild exaggeration of complaints and problems" and thus urged caution in interpreting those results. AR 515. She nonetheless concluded that Mr. Lish's "thought processes are likely to be marked by confusion, distractibility, and difficulty concentrating, and he may experience his thoughts as blocked, withdrawn, or somehow influenced by others," and "may have some difficulty establishing close interpersonal relationships." AR 516.

Dr. Mitchell made clinical findings of severe and ongoing psychotic symptoms in the form of auditory hallucinations, severe daily depression, and severe, daily, ongoing anxiety. AR 501. She diagnosed Mr. Lish with severe schizoaffective disorder and generalized anxiety disorder with panic attacks. AR 502. She scored Mr. Lish at 38 on the GAF, indicating "[s]erious impairment in social and occupational functioning." *Id.*

Dr. Mitchell opined in a check-form that Mr. Lish would be severely limited in his ability to understand, remember, and persist in tasks with detailed instructions, perform activities within a schedule, maintain regular attendance, and be punctual, communicate and perform in a work setting, maintain appropriate behavior in a work setting, complete a normal workday and work week, and set realistic goals and plan independently. AR 502-03. She also indicated that Mr. Lish would be markedly limited in his ability to adapt to changes in a routine work setting. AR 502.

REPORT AND RECOMMENDATION - 11

2.    The ALJ's Analysis of Dr. Mitchell's Opinion

The ALJ gave "some weight" to Dr. Mitchell's opinions that Mr. Lish would have difficulty with communication, relationships, and changes in work setting or routine. AR 27. But the ALJ gave "little weight to the remainder of Dr. Mitchell's opinion" and the GAF score, reasoning that those limitations were inconsistent with results on the MSE showing "logical and coherent speech, cooperative behavior and a good attitude, average intelligence[,] normal orientation, and intact remote memory." *Id.* As with Dr. Widlan, the ALJ also found that Dr. Mitchell's opinion was inconsistent with Mr. Lish's "capacity to perform functions related to activities that interest him, as reflected in treatment records." *Id.*

3.    The ALJ Erred in Rejecting Dr. Mitchell's Opinion.

The ALJ failed to give specific and legitimate reasons for rejecting Dr. Mitchell's opinion.

First, as with Dr. Widlan's opinion, the ALJ erroneously substituted his own interpretation of Mr. Lish's records for that of Dr. Mitchell. As in the ALJ's discussion of Dr. Widlan's opinion, rather than identifying inconsistencies between Dr. Mitchell's opinion and the record, the ALJ identified MSE results with little apparent connection to the opinions he rejected. The ALJ pointed to findings that Mr. Lish showed "logical and coherent speech, cooperative behavior and a good attitude, average intelligence[,] normal orientation, and intact remote memory." AR 27. But the ALJ's conclusion that Dr. Mitchell lacked support for her opinions— e.g., that Mr. Lish would struggle to perform activities within a schedule, maintain regular attendance, be punctual, complete a normal workday and work week, and set realistic goals and plan independently—does not "logically flow[ ]" from the findings the ALJ identified. AR 502-03; *Sample*, 694 F.2d at 642. Instead, the ALJ appeared to impermissibly "cherry pick"

REPORT AND RECOMMENDATION - 12

indications that Mr. Lish functioned well while ignoring indications that his functioning was limited. *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (finding "the ALJ improperly cherry-picked some of [the doctor's] characterizations of [the claimant's] rapport and demeanor instead of considering these factors in the context of [the doctor's] diagnoses and observations of impairment") (citations omitted).

Second, the ALJ's statement about Mr. Lish's activities is again too vague and conclusory to constitute a specific and legitimate reason to reject Dr. Mitchell's examining opinion. *See Reddick*, 157 F.3d at 725 (To reject examining doctor's opinion, ALJ must set out "detailed and thorough summary of the facts and conflicting clinical evidence.").

C.  Dr. Cantrell

1.    Dr. Cantrell's Examining Opinion

Rowin Cantrell, M.D., examined Mr. Lish in July 2013. She reviewed the history of Mr. Lish's conditions along with his medical records. AR 402-03. In an MSE, Dr. Cantrell found Mr. Lish well-groomed, well-dressed, calm, alert, and oriented, cooperative, and with no psychomotor slowing. She found his speech spontaneous, his mood depressed, his affect constricted, his thought process linear and goal directed, and his thought content to include auditory hallucinations. She noted his judgment and insight were good. AR 403. She diagnosed him with "Bipolar disorder, rapid cycling with psychotic features" and assessed a GAF score of 48. *Id.* Dr. Cantrell opined that Mr. Lish "continues to show evidence of ongoing severe mental disability preventing [him] from being ablet [sic] to hold down regular employment," adding, "[w]ill complete federal student loan papers indicating permanent disability." *Id.*

REPORT AND RECOMMENDATION - 13

2.     The ALJ's Analysis of Dr. Cantrell's Opinion

The ALJ gave Dr. Cantrell's opinion and the GAF score "little to no weight." AR 27-28.

He explained that "it appears that [Dr. Cantrell] conducted only a cursory mental status

examination and thus her opinion appears to be based in large part on the claimant's subjective

complaints." As with the opinions from Dr. Widlan and Dr. Mitchell, the ALJ also found Dr.

Cantrell's opinion "inconsistent with the claimant's capacity to perform functions related to

activities that interest him, as reflected in treatment records." AR 28.

3.     The ALJ Erred in Rejecting Dr. Cantrell's Opinion.

These are not specific and legitimate reasons to reject Dr. Cantrell's opinion.

The ALJ's conclusory statement about Mr. Lish's activities fails again, for the same

reason discussed with respect to Dr. Widlan's and Dr. Mitchell's opinions.

The ALJ's second reason to reject Dr. Cantrell's opinion—because "it appears that [Dr.

Cantrell] conducted only a cursory mental status examination" and her opinion was therefore

based largely on Mr. Lish's subjective complaints—is also insufficient.

First, the record does not support the ALJ's inference that Dr. Cantrell's MSE was

cursory. The ALJ offers no support for this statement but appears to base it solely on the fact that

Dr. Cantrell's opinion takes up just four lines in the treatment record. *See* AR 403. Yet the MSE

contains all the usual elements of that type of exam; that the doctor was brief with her notes does

not justify rejecting her opinion. (The Commissioner also asserts that the MSE was

"unremarkable." Dkt. 12, pp. 12-13. But the ALJ did not cite this as a reason for rejecting Dr.

Cantrell's opinion, so the Court declines to consider it as a post hoc rationalization. *See Bray v.*

*Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225–26 (9th Cir. 2009).)

REPORT AND RECOMMENDATION - 14

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Second, even if Dr. Cantrell's MSE was "cursory" and Dr. Cantrell based her opinion largely on Mr. Lish's self-reports, this fact alone would not justify rejecting that opinion. "'A physician's opinion of disability premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted.'" *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (quoting *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999)). The Ninth Circuit recently clarified how an ALJ should evaluate psychiatric evaluations where the ALJ has not properly discounted the claimant's subjective accounts:

> [A]s two other circuits have acknowledged, "[t]he report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology." . . . Psychiatric evaluations may appear subjective, especially compared to evaluation in other medical fields. Diagnoses will always depend in part on the patient's self-report, as well as on the clinician's observations of the patient. But such is the nature of psychiatry. . . . Thus, the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness.

*Buck*, 869 F.3d at 1049 (quoting *Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989)) (citations omitted).

Here, as discussed below, the ALJ did not properly discount Mr. Lish's complaints. Thus, the ALJ's speculation that Dr. Cantrell relied on Mr. Lish's complaints about his symptoms is not a legitimate reason to reject her opinion about Mr. Lish's mental health. Dr. Cantrell inevitably based her opinion on Mr. Lish's subjective statements, because "such is the nature of psychiatry." *Buck*, 869 F.3d at 1049. This finding, standing alone, cannot justify the ALJ's rejection of Dr. Cantrell's examining opinion. *See id.*

D.  Dr. Adam

    1.    Dr. Adam's Treating Opinion

Dr. Adam was Mr. Lish's treating physician. *See* AR 484-87. She performed a physical functional evaluation of Mr. Lish in December 2013. AR 491. In a check-form, she diagnosed Mr. Lish with fibromyalgia, which she opined would severely limit his ability to sit, stand, walk, lift, carry, handle, push, pull, reach, stoop, and crouch. AR 492. She opined that Mr. Lish would be limited to sedentary work for 36 months or more and that he "needs ongoing [psychiatric] care for bipolar & medications & support for fibromyalgia." AR 493. She listed Mr. Lish's chief complaints and reported symptoms—"severe bipolar, & fibromyalgia with chronic pain & fatigue"—but did not list test results or other objective bases for her opinions. AR 491-92. However, in notes from an office visit the same day as the evaluation, Dr. Adam reviewed the history of those two conditions and performed a physical exam. AR 484-87. She noted Mr. Lish's complaints of burning, aching pains in all muscle groups. AR 484. For the musculoskeletal portion of the exam, Dr. Adam noted "diffuse point tenderness throughout body." AR 486.

    2.    The ALJ's Analysis of Dr. Adam's Opinion

The ALJ gave "little weight" to Dr. Adam's opinion. He explained only that the opinion "is inconsistent with the results of Dr. Gaffield's comprehensive physical examination." AR 30.

    3.    The ALJ Erred in Rejecting Dr. Adam's Opinion.

The ALJ erred in rejecting Dr. Adam's opinion, as well.

The medical opinion of a claimant's treating physician is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2). When a treating physician's opinion is not controlling, it is weighted according to factors

REPORT AND RECOMMENDATION - 16

such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician. Id. § 404.1527(c)(2)–(6).

*Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017). The Social Security regulations further state, "[w]e will always give good reasons in our notice of . . . decision for the weight we give your treating source's medical opinion." 20 C.F.R. § 404.1527(c)(2).

Here, the ALJ failed to weigh the six factors from the SSA regulations in rejecting the treating opinion of Dr. Adam. AR 29; *see Trevizo*, 871 F.3d at 675. The Commissioner contends the ALJ's explanation was adequate under the regulation's criterion of "Consistency," which states that "[g]enerally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion." 20 C.F.R. § 404.1527(c)(4). This broad principle does not relieve an ALJ of the responsibility to consider other factors --including the treating relationship -- whenever an examining source's opinion contradicts a treating provider's opinion. To interpret it that way would flip the regulation on its head and permit an ALJ to choose among contradictory medical opinions whichever the ALJ prefers.

Here, the ALJ did not appear to take into account, for example, the length or the nature of the treating relationship, the supportability of Dr. Adam's opinion, or whether Dr. Adam is a specialist in an area relevant to fibromyalgia. *See* 20 C.F.R. § 404.1527(c)(2). The ALJ stated that he preferred Dr. Gaffield's opinion, but he did not "give good reasons" for doing so. *See id.* The ALJ thus erred in rejecting Dr. Adam's opinion.

Because the ALJ omitted from the RFC the limitations that he erroneously rejected in the opinions of Dr. Widlan, Dr. Mitchell, Dr. Cantrell, and Dr. Adam, these errors were not harmless. *See* AR 22; *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (error deemed harmless only if "inconsequential" to "ultimate nondisability determination").

REPORT AND RECOMMENDATION - 17

Accordingly, the Court should remand for a full reexamination of Mr. Lish's physical and mental conditions—specifically, fibromyalgia and bipolar disorder. It is unnecessary for the Court to examine whether the ALJ offered sufficient reasons to give "great weight" to the opinions of consultative examiners Dr. Clifford and Dr. Donahue. *See* Dkt. 11, pp. 11-14; AR 26.

## IV.   THE ALJ'S CONSIDERATION OF MR. LISH'S TESTIMONY

The ALJ found that Mr. Lish's statements about "the intensity, persistence and limiting effects of these symptoms are not entirely credible." AR 23. Mr. Lish contends that the ALJ did not provide adequate reasons to reject his testimony.

Questions of credibility are solely within the control of the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). The Court should not "second-guess[ ]" this credibility determination. *Allen v. Heckler*, 749 F.2d 577, 580 (9th Cir. 1984). In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. *See Allen*, 749 F.2d at 579. Even if some of the reasons for discrediting a claimant's testimony should properly be discounted, this does not render the ALJ's determination invalid, as long as substantial evidence supports that determination. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

To reject a claimant's subjective description of symptoms, the ALJ must provide "specific, cogent reasons for the disbelief." *Lester v. Chater*, 81 F.3d. 821, 834 (9th Cir. 1995) (citation omitted). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester*, 81 F.3d at 834.

Here, Mr. Lish testified that anxiety and auditory hallucinations are the primary reasons he is unable to work. AR 83, 85-86 He testified that he usually needs to take medication before

REPORT AND RECOMMENDATION - 18

leaving home to avoid hyperventilating from stress and anxiety. AR 86. He testified that he hears

voices and when he goes out he must listen to headphones to distract him and focus him. AR 85-

86, 88.

Mr. Lish testified that the voices he hears through the hallucinations are "a constant," but

that they fluctuate in intensity. AR 88. He testified that hearing voices has caused him to yell at

people on the street, and that it would interfere with his ability to interact with others in a work

environment. AR 88-89. He stated that he typically does not have trouble distinguishing the

voices from reality. AR 96. He testified that he experiences depression that causes him to sleep

for days and to skip personal care. AR 89, 92. He testified that he has not found an effective

combination of medications for his mental symptoms. AR 89-90.

None of the three reasons the ALJ gave for discounting Mr. Lish's testimony are clear

and convincing.

First, the ALJ found that "the overall record does not establish that [Mr. Lish's] mental

symptoms are so severe as to be preclusive of all work activity." AR 24. The ALJ acknowledged

Mr. Lish's consistent reports of psychological symptoms and that some objective evidence in the

record supported those reports. AR 23-24. But the ALJ recounted observations "within normal

limits" on mental health examinations: e.g., that Mr. Lish was "calm, alert, and oriented times

three with no psychomotor slowing," AR 24, 403; his speech was logical and coherent, AR 501;

and his remote memory appeared to be intact, AR 504.

This is not a clear and convincing reason for rejecting Mr. Lish's testimony. As described

above, Mr. Lish's testimony, and the medical record, show that he is regularly experiencing

auditory hallucinations and that he talks to the voices in his head. The ALJ's observation that Mr.

Lish's psychological evaluations contained some unremarkable findings does not support the

ALJ's conclusion that Mr. Lish's testimony was non-credible, since, as the ALJ acknowledged, the evaluations also contained numerous indications that Mr. Lish's mental symptoms significantly limited his functioning. *See* AR 24 ("Although the claimant sometimes presented with depressed mood or anxiety, he consistently had normal rate and rhythm of speech and spoke in full sentences. . . . [A]lthough his thought content was notable for hallucinations, he was consistently fully oriented with intact cognitive functioning."). The ALJ again appears to have impermissibly "cherry picked" items from the record that favor non-disability while downplaying those that favor disability. *See Ghanim*, 763 F.3d at 1164.

Second, the ALJ found based on Mr. Lish's activities that he "has poor credibility regarding the severity of his mental symptoms." AR 25. This is not a clear and convincing reason, either.

The record does not support the ALJ's conclusion that Mr. Lish's activities contradict his testimony about social impairments. The ALJ noted that Mr. Lish "tries to get out of his home a couple of time [sic] a week" and uses public transportation regularly. AR 26. But the record shows only that Mr. Lish rode the bus to psychiatric appointments, and that he reported struggling with auditory hallucinations and "extreme hallucinations" in doing so, and that he did not always do so punctually. AR 415, 473, 501, 555. Several of the "activities" the ALJ cites were actually Mr. Lish musing about or aspiring to do activities. *See* AR 86-87 (planned to go to two concerts but did not go), 94, 422 (discussing looking for a band to join), 429 (discussing possibility of volunteering with dogs). A disability applicant should not be penalized for actually attempting to lead a normal life—much less for having ideas about possible attempts to lead a normal life yet being unable to actually do the hoped-for activities. *See Reddick*, 157 F.3d at 722.

REPORT AND RECOMMENDATION - 20

As the ALJ noted, Mr. Lish attended classes on cooking, food, and weight management, AR 655, 657, 672, 679-80. But he also testified that during these groups he wore headphones on one ear to drown out auditory hallucinations, as he tried to listen through the other. AR 96. The ALJ also found that Mr. Lish maintained friendships and a relationship with his partner and played guitar with others. AR 25. But the record contains few details about the extent of these social activities, and those it does contain do not support a finding that those activities are inconsistent with the symptoms Mr. Lish reported. *See* AR 415 ("able to connect with the few friends that he have [sic]"), 431 ("going shopping to prepare for company"), 550 (falling out with visiting friend), 553 ("jam sessions" with neighbor), 560 ("does tech work" for friends), 595 (friendship with neighbor deteriorated to the point Mr. Lish did not want to use the elevator near the person's room and considered legal action).

Nor does the ALJ's finding that, with respect to Mr. Lish's cognitive impairments, Mr. Lish's activities contradict his testimony constitute a clear and convincing reason to reject that testimony. The ALJ found that Mr. Lish's ability to play guitar and attend a guitar class, his looking for a band to join, and his use of public transportation show "some degree of concentration, persistence, or pace," and that playing five hours per day playing computer games, along with watching television and internet shows, writing in a journal, and using a music editing computer program, "requires a significant degree of concentration," AR 25.

The ALJ further noted that Mr. Lish planned to go to a concert, though he did not go for reasons unrelated to mental symptoms. *Id.* The ALJ pointed out that Mr. Lish had forgotten his headphones twice after leaving the house but had been able to function without an increase in his anxiety. *Id.*; *see* AR 570. But the record does not indicate for how long Mr. Lish engaged in these activities or with what success. These limited activities do not indicate that Mr. Lish

REPORT AND RECOMMENDATION - 21

demonstrated skills that "meet the threshold for transferable work skills." *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

Considered as a whole, the record lacks substantial evidence for the ALJ's conclusion that Mr. Lish "easily partakes in activities that interest him such that his alleged inability to work appears to be volitional." AR 25-26. On remand, the ALJ should reevaluate Mr. Lish's subjective symptom testimony in addition to the medical evidence.

<u>CONCLUSION</u>

Based on the foregoing discussion, the undersigned recommends that the Court find the ALJ improperly determined Mr. Lish to be not disabled, and therefore that it reverse the ALJ's decision to deny benefits and remand this matter for further administrative proceedings. On remand, the ALJ should reevaluate the medical opinion evidence and Mr. Lish's testimony and incorporate into the RFC each of Mr. Lish's limitations for which there is substantial evidence.

The parties have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); Federal Rule of Civil Procedure (FRCP) 72(b); *see also* FRCP 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the above time limit, the Clerk shall set this matter for consideration on **February 16, 2018**, as noted in the caption.

DATED this 31st day of January, 2018.


Theresa L. Fricke
United States Magistrate Judge

REPORT AND RECOMMENDATION - 22